UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MASONRY INDUSTRY TRUST ADMINISTRATION, INC., an Oregon corporation,<br><br>Plaintiff,<br><br>v.<br><br>D/J MASONRY LLC, a Washington limited liability company,<br><br>Defendant. | No. 2:15-CV-0185-SMJ<br><br>**ORDER DENYING SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION TO COMPEL** |

On April 17, 2017, the Court held a hearing on Defendant D/J Masonry LLC's (D/J Masonry) Motion for Protective Order, ECF No. 56, and Motion for Summary Judgment, ECF No. 68, and Plaintiff Masonry Trust Administration, Inc.'s (Masonry Trust) Motion to Compel, ECF No. 60, and Motion for Summary Judgment, ECF No. 63. This Order memorializes and supplements the Court's oral ruling.

## I. INTRODUCTION

Masonry Trust alleges that D/J Masonry LLC owes contributions to the trust for work performed subject to a collective bargaining agreement (CBA) with the International Union of Bricklayers and Allied Craftsmen Local #3 (the Union). D/J

ORDER **-** 1

Masonry has refused to provide nearly any information requested by Masonry Trust in discovery. D/J Masonry asserts that the information sought is irrelevant because the CBA terminated in May 2010 and that D/J Masonry is not liable for any contributions because it is not the successor to or alter ego of D/J Caulking, which agreed to be bound by the CBA. Resolving each of the parties' pending motions turns on the validity of these assertions. First, the CBA did not terminate in May 2010 because D/J Caulking did not provide timely notice of intent to terminate. Second, material issues of fact remain on the questions whether D/J Masonry is the successor to or alter ego of D/J Caulking. Accordingly, as the Court ruled orally and for the reasons explained below, both parties' motions for summary judgment are denied. Additionally, D/J Masonry's motion for a protective order is denied and Masonry Trust's motion to compel is granted. The parties shall confer on or before April 24, 2017, to reach agreement on the appropriate scope of discovery in light of the factual and legal issues raised in this case.

## II. BACKGROUND

**A. Factual Background**

On January 21, 2008, D/J Caulking executed a Compliance Agreement in which it agreed to be bound by the CBA executed between the Union and the Washington State Conference of Masonry Contractors, Seattle, Tacoma and

Spokane.[1] ECF No. 62 at 2; ECF No. 66 at 2, 7. Among other things, the CBA requires employers to pay wages and make contributions on behalf of its employees performing work covered under the CBA. ECF No. 61 at 2.

The CBA included the following termination provision:

> Section 1. This AGREEMENT shall be in full force and effect commencing June 1, 2005 and shall continue in full force to and including May 31, 2010.
>
> Section 2. This AGREEMENT will automatically be renewed yearly thereafter unless written notice is given by the EMPLOYER or the UNION of the intention to modify the terms of the AREEMENT in whole or in specific parts or to terminate, providing the written notice is received by the other party not later than sixty (60) days, nor more than ninety (90) days prior to the expiration or anniversary date.

ECF No. 66 at 10.

On September 29, 2009, D/J Caulking sent a letter to the president of the Union, Tim Thompson, that appears to address a dispute concerning money allegedly owed for work done by a particular employee. ECF No. 62 at 7. The letter includes the following closing: "Please let this serve as further notice that we DJ Calking no longer wish to be a part of your organization. We feel your values and

---

[1] Plaintiff Masonry Industry Trust Administration, Inc. (Masonry Trust) is the administrative agent for certain Funds established under the Employee Retirement Income Security Act of 1974. ECF No. 1 at 2; ECF No. 65 at 2. These Funds accept and administer benefit contributions made by employers—as relevant here, on behalf of employee members of the Union. ECF No. 1 at 3; ECF No. 65 at 2.

ORDER - 3

business tactics do not mach [sic] our own." ECF No. 62 at 7. The letter is signed by David Petroske and Jennifer Petroske. ECF No. 62 at 7.

On October 29, 2009, D/J Caulking sent another letter stating the following:

> As owners of D/J Caulking and Coatings we have come to the conclusion that our company is resigning from the Bricklayers and Allied Craft Workers Union. There are no qualified PCC (Pointer, Caulker, and Cleaner) in this area or training being performed on the east side of Washington State. We will not be renewing our contract in 2010.

ECF No. 62 at 10.

On March 10, 2010, Thompson sent the following letter advising D/J Caulking of the CBA's May 31, 2010 expiration date and intent to negotiate:

> The WSCMC "Agreement" between BAC Local #3 WA/ID/MT and your firm will expire May 31, 2010.
>
> Take this as formal notification per Article XIX of the WSCMC Agreement of our (Union) intent to negotiate with your Committee in part or whole of the "Agreement" to which both parties are signed (Union/Employer) to include but not limited to, language, wages, benefits and or subsistence.
>
> Our Committee will be looking forward to meeting your firm to begin negotiating at a date and time that can be mutually agreed upon.
>
> In the past your firm has chosen to allow the Mason Contractors Association of Eastern Washington to negotiate the terms of the Agreement, if you do not wish to do so again, please notify them of your intent to negotiate on your own, otherwise we will assume that you wish the Association to negotiate for your firm.

ECF No. 66 at 12. Thompson never received a response to the letter from D/J Caulking. ECF No. 66 at 2.

ORDER - 4

D/J Caulking ceased operations on October 15, 2012. ECF No. 62 at 3. D/J Masonry, LLC was established on April 29, 2013 by owners David and Jennifer Petroske. ECF No. 57 at 3, 14.

**B.     Procedural History**

In 2009 Plaintiff Masonry Trust filed suit against D/J Caulking in the U.S. District Court for the District of Oregon, ultimately obtaining a judgment against D/J Caulking for unpaid ERISA contributions for the period of February 2008 to August 2009. ECF No. 11 at 2.

Masonry Trust filed this suit in July 2015 alleging that D/J Caulking failed to pay all amounts owed for wages and contributions of covered employees for the period after August 2009. ECF No. 1 at 12. Masonry trust further alleges that D/J Masonry is the alter ego and/or successor company to D/J Caulking and therefore is bound by the CBA and liable for the obligations of D/J Caulking. ECF No. 1 at 4–5.

D/J Masonry moved to dismiss for lack of jurisdiction, arguing that this suit was instituted as a veiled collection action seeking to recover the prior judgment against D/J Caulking. ECF No. 5 at 2. The Court denied the motion, concluding that the present action raises new ERISA claims covering a different time period than addressed in the earlier case. ECF No. 17 at 3.

In October 2016, Masonry Trust moved to compel discovery, arguing that D/J Masonry was refusing to properly respond to nearly all requests for discovery. ECF No. 35. The Court granted Masonry Trust's motion in part, reminding D/J Masonry that it could not rely on broad, non-specific objections to avoid disclosure of relevant materials and ordering D/J Masonry to "produce any relevant, non-privileged documents that are responsive to Plaintiff's discovery requests." ECF No. 37 at 2.

The parties filed the presently pending motions in February. Masonry Trust again moved to compel, arguing that D/J Masonry has again failed to produce the vast majority of information requested. ECF No. 60 at 2–3. D/J Masonry moved for a protective order, arguing that the requested documents would include thousands of confidential business records, financial information, and privileged materials. ECF No. 56 at 2. And both parties moved for summary judgment. ECF Nos. 63 & 68.

### III. LEGAL STANDARD

**A. Summary Judgment**

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is

a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citation omitted). When considering a motion for summary judgment, the Court does not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**B.     Discovery motions**

Rule 26(c)(1) permits the court, for good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." A trial court has broad discretion in determining whether to grant a protective order. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

A party may move to compel disclosure or discovery after certifying "that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court

action." Fed. R. Civ. P. 37(a)(1). On a motion to compel disclosure or discovery, the party opposing discovery bears the burden of resisting disclosure. *Rogers v. Giurbino*, 288 F.R.D. 469, 479 (S.D. Cal. 2012). "A district court has wide discretion in controlling discovery." *Jeff D. v. Otter*, 643 F.3d 278, 289 (9th Cir. 2011) (quoting *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir.1988)).

## IV. DISCUSSION

### A. Parties' Motions for Summary Judgment

The parties' motions raise the same key questions: (1) did the CBA between D/J Caulking and the Union terminate on May 31, 2010? And if not, (2) is D/J Masonry liable to Masonry Trust for contributions as either the successor to or alter ego of D/J Caulking? Because the CBA did not terminate and issues of fact remain on the questions of successor and alter ego liability, both parties' motions for summary judgment are denied.

#### 1. The CBA did not terminate on May 31, 2010.

D/J Caulking argues that D/J Masonry's two letters to the union constituted sufficient notice of its intention to terminate the CBA on the expiration date, May 31, 2010. ECF No. 68 at 4–5; ECF No. 86 at 3. But the CBA expressly provides that the agreement will automatically renew annually unless a party provides written notice of its intent to modify or terminate the agreement "not later than

ORDER - 8

sixty (60) days, nor more than ninety (90) days prior to the expiration or anniversary date." ECF No. 66 at 10.

D/J Masonry cites a Fifth Circuit case, *New England Carpenters Cent. Collection Agency v. Labonte Drywall Co., Inc.*, 795 F.3d 271 (5th Cir. 2015) for the proposition that the primary purpose of a CBA termination provision is to provide actual notice, and argues that D/J Caulking provided adequate notice here. But *New England Carpenters* involved a termination provision that simply required a party to give written notice to the other of intent to terminate. 795 F.3d at 277. The provision did not specify a time period for the notice or particular required language. *Id.* at 277–78. In that context, the court considered whether a party's letter expressed an unequivocal intent to terminate and provided timely actual notice to the other party. *Id.* at 278–80. Here, by contrast, the termination provision unambiguously requires notice to be provided in a specific time-frame. D/J Masonry has not articulated any legitimate basis for disregarding the CBA's clear timeliness requirement.

D/J Masonry further argues that in a March 2010 letter, the Union acknowledged the CBA would terminate on May 31, 2010. ECF No. 68 at 5; ECF No. 86 at 4. This is a serious mischaracterization of the March 2010 letter, which does the opposite of acknowledging termination. The March 2010 letter clearly articulates the Union's expectation that the CBA will continue after the expiration

ORDER - 9

date and addresses the Union's intent to negotiate a subsequent agreement. ECF No. 66 at 12.

It is undisputed that D/J Caulking did not provide written notice of its intent to terminate the CBA between 60 and 90 days before May 31, 2010. Assuming that D/J Caulking's letters to the union would have constituted notice of intent to terminate, by the unambiguous terms of the CBA, that notice was not timely. Accordingly, the CBA automatically renewed and did not expire on May 31, 2010.

D/J Masonry also argues that neither it nor D/J Caulking performed any work subject to the CBA after September 29, 2009. ECF No. 68 at 6, ECF No. 86 at 5. But D/J Masonry does not provide any evidence to support this assertion, and its refusal to produce any of the information requested by Masonry Trust in discovery has prevented Masonry Trust from determining whether or not D/J Masonry conducted work subject to the CBA after that date.

**2. Issues of fact preclude summary judgment on the question of D/J Masonry's liability for contributions.**

Masonry Trust argues that D/J Masonry is liable for obligations owed by D/J Caulking under a successor liability theory, and that D/J Masonry is liable for D/J Caulking's obligations and continues to be bound by the CBA because it is the alter ego of D/J Caulking. D/J Masonry plausibly alleges these claims and has

submitted some evidence supporting them, but the evidence in the record is not sufficient at this time to conclusively resolve these issues.

   *a. Sucessor liability*

In employment contexts, successor liability generally applies where "(1) the subsequent employer was a bona fide successor and (2) the subsequent employer had notice of the potential liability." *Steinbach v. Hubbard*, 51 F.3d 843, 846 (9th Cir. 1995). Whether an employer is a "bona fide successor" turns "on the degree of business continuity between the successor and predecessor." *Id.* Courts should also consider "the extent to which the predecessor is able to provide adequate relief." *Id.*

Because D/J Masonry is owned and managed by the same individuals as D/J Caulking, D/J Masonry clearly had notice of the potential liability. And it appears that the now-defunct D/J Caulking has no ability to provide relief. Accordingly, the question here is whether there is business continuity between the D/J Caulking and D/J Masonry.

In considering whether there is substantial continuity between businesses, courts consider the following non-exhaustive factors:

> [Whether] there has been a substantial continuity of the same business operations[;] [whether] the new employer uses the same plant; [whether] the same or substantially the same work force is employed; [whether] the same jobs exist under the same working conditions; [whether] the same supervisors are employed; [whether] the same machinery, equipment, and methods of production are used; and

> [whether] the same product is manufactured or the same service [is] offered.

*Resilient Floor Covering Pension Trust Fund Bd. of Trs. v. Michael's Floor Covering, Inc.*, 801 F.3d 1079, 1090–91 (9th Cir. 2015) (quoting *NLRB v. Jeffries Lithograph Co.*, 752 F.2d 459, 463 (9th Cir. 1985)) (alterations in original).

On the record presently before the Court, there is insufficient evidence from which to conclude that D/J Masonry is or is not the successor to D/J Caulking. Masonry Trust plausibly alleges that D/J Masonry is the successor to D/J Caulking, and the fact that the entities have the same address, phone number, email address, principals and managers, supports that it may be. ECF No. 65 at 28–34. But it is not clear from the record whether the companies perform the same type of work, whether they use the same physical plant or office space, whether they have the same jobs and any of the same employees, or whether they own any of the same assets.

### b. Alter ego

A successor employer "is not bound by the substantive terms of its predecessor's CBA unless it assumes or adopts those obligations." *Sheet Metal Workers Int'l Ass'n., Local 359 v. Arizona Mech. & Stainless Inc.*, 863 F.2d 647, 651 (9th Cir. 1988) "However, a non-signatory employer may be held to the terms of a CBA signed by another employer under either the 'alter ego' doctrine or the

ORDER - 12

'single employer' doctrine." *Id.* The question is whether "the difference between the two entities is based on technical structure rather than an actual change in ownership or management." *New England Mech., Inc. v. Laborers Local Union 294*, 909 F.2d 1339, 1343 (9th Cir. 1990).

As with the question whether D/J Masonry is the successor of D/J Caulking, the evidence in the record is insufficient to answer one way or the other whether D/J Masonry is the alter ego of D/J Caulking

**B.     Discovery Motions**

Discovery must be reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." But "[a] party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz v. State Farm Mut. Auto. Ins.* Co., 331 F.3d 1122, 1130 (9th Cir. 2003). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id.*

Masonry Trust has provided D/J Masonry with discovery requests seeking a broad array of business records and information about employees or independent contractors. D/J Masonry has objected and has produced almost nothing. D/J

Masonry's underlying argument in opposing discovery is the same one it made on summary judgment: that D/J Caulking did not renew the CBA in 2010 and D/J Masonry is not liable as the successor or alter ego of D/J Caulking. ECF No. 56 at 2. As discussed, that argument fails. And D/J Masonry has not met its burden of showing that it will be unduly prejudiced or harmed by being required to produce the requested records. Accordingly, the Court denies D/J Masonry's motion for a protective order.

The Court also grants Masonry Trust's motion to compel. As the Court noted in its prior order granting Plaintiff's motion to compel, D/J Masonry must produce any relevant, non-privileged documents that are responsive to Plaintiff's discovery requests. ECF No. 37 at 2. However, the Court notes that while much of what Masonry Trust requests appears reasonably calculated towards obtaining relevant information, the requests are quite broad. Accordingly, the Court will not order D/J Masonry to immediately produce all responsive information. Instead, because the parties are better positioned to determine the appropriate scope of discovery in light of the legal and factual issues in this case, the parties shall confer to resolve this issue on or before April 24, 2017.

To facilitate a productive meeting, the Court notes that, at a minimum, all information that may be relevant to whether D/J Masonry is the successor and/or alter ego of D/J Caulking or to the amount (if any) of contributions owed by D/J

Masonry is discoverable. The Court further reminds the parties that business records are not generally privileged. The Court will be available by telephone to resolve matters on which the parties cannot agree, but the Court warns the parties that they should make all attempts to resolve these issues without the Court's involvement and that the Court will consider sanctioning actions it considers to be taken in bad faith.

## CONCLUSION

For the reasons discussed, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Protective Order, **ECF No. 56**, is **DENIED.**
2. Plaintiff's Motion to Compel, **ECF No. 60**, is **GRANTED** as follows:
   
   *A.* The parties shall confer on or before April 24, 2017, to address the appropriate scope of discovery in light of the issues raised in this case.

3. Plaintiff's Motion for Summary Judgment, **ECF No. 63**, is **DENIED**.
4. Defendant's Motion for Summary Judgment, **ECF No. 68**, is **DENIED**.
5. Because the discovery disputes in this case may interfere with deadlines set in the Scheduling Order, ECF No. 23, the parties shall confer and propose new case management deadlines on or before **April 24, 2017**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 19th day of April 2017.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER **-** 16